IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

| | | |
|---|---|---|
| HENRY CHINN, JR., | ) | |
| Administrator of the Estate of | ) | |
| MICHAEL CHINN, SR., | ) | |
| Deceased, | ) | |
|     Plaintiff, | ) | Case No.:  2:20-cv-2662 |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX AZAR, in his official capacity | ) | |
| as U.S. Secretary of Health and | ) | |
| Human Services; and the | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES | ) | |
| 200 Independence Ave. SW | ) | |
| Washington, District of Columbia, 20201; | ) | |
| | ) | |
| STEVEN MNUCHIN, in his official capacity | ) | |
| as Secretary of the Treasury; and the | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE TREASURY | ) | |
| 1500 Pennsylvania Ave. NW | ) | |
| Washington, District of Columbia, 20220; and | ) | |
| | ) | |
| CHARLES RETTIG, in his official capacity | ) | |
| as Comm'r of the Internal Revenue Service; and | ) | |
| the INTERNAL REVENUE SERVICE | ) | |
| 1111 Constitution Ave. NW | ) | |
| Washington, District of Columbia, 20004, | ) | |
| | ) | |
|     Defendants. | ) | |

**PETITION FOR JUDICIAL REVIEW**

## PRELIMINARY STATEMENT

1. Michael Chinn, Sr. applied for coverage through the Federal Marketplace during the fall 2018 Marketplace open enrollment period and, at the time of application, received notice that he was approved for a silver plan with advanced premium tax credits effective January 1, 2019.

2. Mr. Chinn selected BlueCross Blue Shield of Kansas for his qualified health plan provider and paid his premiums on time through May 2019.

3. Mr. Chinn was hospitalized on March 5, 2019 and from March 18 to April 17, 2019.

4. On May 6, 2019, BCBS sent Mr. Chinn a Notice of Payment Due in the amount of $78.95.

5. Then, on May 13, 2019, BCBS send another Notice of Payment due in the amount of $1,206.95.

6. From May 14 - 15, 2019, Mr. Chinn was hospitalized.

7. The Marketplace issued Mr. Chinn a letter stating that he had until July 30, 2019 to enroll in his "new" plan.

8. Mr. Chinn was hospitalized from June 7 – 25, 2019.

9. Mr. Chinn's daughter paid his premium payment in June 2019 and BCBS accepted the payment.

10. Mr. Chinn was inpatient in a rehabilitation center from June 25 to July 3, 2019.

11. On July 9, 2019, Mr. Chinn admitted to the University of Kansas Hospital, where he remained inpatient until his death on July 29, 2019.

12. On August 29, 2019, the estate received a letter indicating his coverage would end on August 1, 2019 due to death. The letter further advised "you don't need to take any action at this time."

13. The Marketplace determined that Mr. Chinn was *not* eligible for financial assistance of advance payments of the premium tax credit for coverage year 2019 because he had not filed his 2017 tax return reconciling the advance payments for 2016.

14. Mr. Chinn's estate filed the appropriate tax returns and appealed the denial of eligibility, but the Federal Hearing Officer affirmed the Marketplace's re-determination that Mr. Chinn was *not* eligible.

## JURISDICTION AND VENUE

15. Because this action arises under the federal Administrative Procedure Act, ("APA"), 5 U.S.C. § 706, this Court has federal question jurisdiction under 28 U.S.C. § 1331.

16. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e), as Mr. Chinn resided in the State of Kansas, no real property is involved in this action, and a majority of the events or omissions giving rise to the claim occurred in Kansas.

## PARTIES

17. Mr. Chinn was a resident of Butler County, Kansas at the time of his death and received medical treatment in Sedgwick and Wyandotte Counties during the time he sought Marketplace eligibility.

18. Defendant Alex Azar is the Secretary of the United States Department of Health and Human Services, ("HHS") and is sued in his official capacity. Defendant Azar ("the Secretary") has overall responsibility for implementation of the Federal Marketplace Exchange.

19. Defendant Steve Mnuchin is the Secretary of the United States Department of Treasury and is sued in his official capacity.

20. Defendant Charles Rettig is the Commissioner of the Internal Revenue Service, a division of the Department of Treasury, and is sued in his official capacity

21. Defendant HHS is an executive agency of the United States within the meaning of the APA.

22. Defendant U.S. Department of Treasury is an executive agency of the United States within the meaning of the APA.

23. Defendant Internal Revenue Service is an executive agency of the United States within the meaning of the APA.

## **CONDITIONS PRECEDENT**

24. Plaintiff received a Marketplace Eligibility Appeal Final Decision on November 3, 2020 which is a final decision pursuant to 5 U.S.C. §704.

25. Pursuant to 45 C.F.R. 155.505(g), the matter is ripe for judicial review as there are no other levels of appeal.

26. There are no other adequate remedies available in a court; therefore, the action is subject to judicial review.

27. The Amount in controversy exceeds $75,000 as Mr. Chinn's estate is liable for several hundred thousands of dollars without medical coverage.

## **STATUTORY AND REGULATORY BACKGROUND**

28. The US Department of HHS administers and enforces all aspects of the Affordable Care Act (the "ACA").

29. The ACA regulates the individual market for health insurance through insurance Exchanges.

30. The ACA directed HHS to establish a Federally facilitated Exchange in any state that did not elect to establish a State-based Exchange.

31. Kansas uses the federally run exchange at Healthcare.gov, but with a marketplace plan management design that leaves plan oversight to the state.

32. Under the marketplace plan management design, the State assumes certain duties, including but not limited to issuing applications for qualified health plans, collecting data to support certification and exchange operations, and recommending certification of health plans to HHS.

33. HHS is responsible for, among many other duties, implementing and overseeing a state's certification of qualified health plans, coordinating responses to issuer questions, providing assistance to issuers and insuring the state's compliance with enrollment transaction requirements and reconciliation.

34. The IRS is responsible for tax provisions of the ACA including determining eligibility for the premium tax credits.

35. When an individual enrolls in a health insurance plan through the federal exchange, or "Marketplace", and is not eligible for affordable coverage through an employer, the individual may be eligible for a health insurance premium tax credit.

36. The premium tax credit is designed to help make health insurance premiums more affordable for middle and low-income households.

37. 42 U.S.C. § 18081 sets for the procedures for determining eligibility for receiving premium tax credits. The Secretary shall establish a program meeting the requirements for

5

determining whether an individual who is to be covered by a qualified health plan offered through an Exchange meets the requirements for the premium tax credit.

38. The ACA directs the Secretary of HHS in consultation with the Secretary of the Treasury, to establish a program under which advance determinations are made under § 18081 so the Treasury Secretary can make advance payments of such credits or reductions to reduce the premiums payable by individuals eligible for such credits. 42 U.S.C. § 18082.

39. Finally, 42 U.S.C. § 18083 directs the Secretary to establish a system under which individuals may apply for enrollment in, receive a determination of eligibility for participation in, and continue participation in, applicable health subsidy programs. Such system shall ensure that if an individual applying to an Exchange is found through screening to be eligible for medical assistance, the individual is enrolled for assistance under such plan or program.

40. Because the payments are paid in advance, a taxpayer's annual income might be more or less than the estimate that was used when the advance premium tax credit was determined; therefore, the taxpayer who receives an advance premium tax credit must reconcile the amount of the credit received with the eligible credit amount. If the amount of the advance premium tax credit is more than the amount to which the taxpayer is ultimately entitled, the taxpayer owes the excess credit back to the Government, and it is reflected as an increase in tax.

41. The Secretary has promulgated rules for establishing eligibility, redetermining eligibility during a benefit year and terminating enrollment.

42. The Exchange *must* determine an applicant eligible for enrollment in a qualified health plan if he or she is: a citizen, a national, or lawfully present in the U.S.; is not incarcerated; and who meets the residency requirements. 45 C.F.R. §155.305.

43. The Exchange must redetermine the eligibility of an enrollee in a qualified health plan during the benefit year if it receives and verifies new information reported by an enrollee or identifies updated information through data matching.  45 C.F.R. §155.330.

44. Upon application, the Exchange may automatically enroll qualified individuals.  45 C.F.R. §155.410.

45. If the Exchange identifies updated information that the tax filer for the enrollee's household did not comply with the requirements in §155.305(f)(4), the Exchange must do the following: notify the enrollee regarding the updated information; allow an enrollee 30 days from the date of the notice to notify the Exchange that such information is inaccurate; make a reasonable effort to identify and address the causes of any inconsistencies by contacting the application filer to confirm the accuracy of the information submitted by the application filer; if unable to resolve the inconsistency, provide notice to the applicant and give them 90 days from the date of the notice to either present satisfactory documentary evidence or otherwise resolve the inconsistency.  45 C.F.R. §155.330(e)(2)(iii) (referencing §155.330(e)(2)(i); §155.315(f)).

46. The Exchange must provide exceptions, on a case-by-case basis, to resolve any inconsistency where documentation does not exist or is not reasonably available; and must be flexible in in its methods for collecting information and verification of information, as well as the specific information requirement to be collected.  45 C.F.R. §155.315 (h) and (i).

47. The Exchange may initiate termination of an enrollee's enrollment in a qualified health plan in the following circumstances: when the enrollee is no longer eligible for coverage in as plan through the Exchange; the enrollee has not paid premiums and the 3-month grace period or any other grace period has been exhausted; the enrollee's coverage is rescinded due to fraud or intentional misrepresentation of material fact; the health plan is terminated or decertified; the

enrollee changes to another health plan; the enrollee was enrolled in the plan without his knowledge or consent; or if the enrollee violates the conditions of participations or contribution rules.  45 C.F.R. §155.430.

48. The Exchange must provide reasonable notice of at least 14 days before the requested date of termination.  45 C.F.R. 155.430(d)(1)(i).

## CLAIMS

### Violations of 5 U.S.C. § 706 (2) (A), (C), (D) and (F)

49. When reviewing an agency action, this Court shall hold unlawful and set aside any agency action, findings and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

50. In addition, when the agency acts in excess of its statutory jurisdiction, authority, or limitations or short of a statutory right, the Court may set aside their action under 5 U.S.C. §706(C).

51. When an agency acts without observance of procedure required by law or makes a decision unwarranted by the facts, the reviewing court may hold those actions unlawful and set them aside.  5 U.S.C. § 706(D) and (F).

### Count I – Inadequate and Improper Notices

52. Plaintiff repeats and realleges the allegations in paragraphs 1-51 as if more fully set forth herein.

53. The decedent, Mr. Chinn, received multiple misleading and confusing notices regarding his eligibility for coverage through the Marketplace and never received notice that he was no longer eligible for premium tax credits based on his income tax reconciliation.

54. He first received a letter indicating his eligibility for a new Marketplace plan on May 10, 2019.

55. On May 31, 2019, the Marketplace issued Mr. Chinn a letter stating he had until July 30, 2019 to enroll in said new plan – without ever notifying him his old plan would be cancelled or giving him the opportunity to pay for the same plan at the full price without the tax credit.

56. Mr. Chinn's daughter made a premium payment on his behalf in June 2019, and the health plan accepted that payment.

57. The estate of Mr. Chinn received a letter on August 29, 2019 stating his coverage ended on August 1, 2019 due to his death on July 29, 2019.

58. Neither Mr. Chinn nor his estate received information that he needed to file a tax return in order to maintain his coverage; nor did Mr. Chinn or his estate receive information indicating what his premiums would be without the premium tax credit payment.

59. Despite not receiving that information, the Marketplace determined Mr. Chinn was not eligible for advance payments of the premium tax credit because he had not filed his tax return to reconcile the advance payments from the previous year.

60. Upon learning of this issue, the estate submitted Mr. Chinn's tax returns; however, the Federal Hearing Officer determined they were too late to save his eligibility.

61. The hearing officer failed to consider that Mr. Chinn never received any notice that he might lose his coverage for failing to submit his prior tax returns.

62. In addition, Mr. Chinn never received information that his payments to his health plan were deficient based on not being eligible for premium tax credits.

63. The Exchange failed to follow procedures designed to facilitate continued enrollment.

64. By failing to follow the procedures set forth in 45 C.F.R. § 155.330, the agency acted in an arbitrary and capricious manner and abused its discretion.

65. The agency should be compelled to allow Mr. Chinn's estate the ability to pay the premiums due for June and July 2019 and access the coverage guaranteed therein.

### **Count II – Failure to provide grace period or reasonable notice.**

66. Plaintiff repeats and realleges the allegations in paragraphs 1-65 as if more fully set forth herein.

67. Under 45 C.F.R. 156.270(d) and 155.430(b)(2)(ii)(A), Mr. Chinn was entitled to a 3-month grace period when failing to pay premiums and receiving advance payments of the premium tax credit.

68. The federal hearing officer did not mention the 90-day grace period in the decision upholding the denial of Mr. Chinn's eligibility.

69. If Mr. Chinn was not eligible for any premium tax credits, then his other option was to pay the full amount of the premium without the credit – an option he or his estate could have and would have exercised had he received proper notice.

70. By terminating his coverage prior to the exhaustion of the 90-day grace period, the agency acted in excess of statutory jurisdiction, authority, or limitations or short of statutory right under 45 C.F.R. § 155.430(b)(2)(ii)(A).

71. In addition to the 90-day grace period, BCBS was required to provide 14 days' notice to Mr. Chinn before the effective date of termination or changes to his eligibility for tax credits.  45 C.F.R. 155.430(d)(1)(i) and (ii).

72. BCBS only provided a 10-day notice of termination without explanation.

73. The Exchange has the duty to certify all qualified health plans to ensure they meet requirements consistent with the Affordable Care Act. Further, the Exchange must monitor the qualified health plans to ensure ongoing compliance with the ACA requirements. 45 C.F.R. §155.1010.

74. This Court should compel the agency to allow Mr. Chinn's estate the ability to pay the premiums due for June and July 2019 and access the coverage guaranteed therein.

**Count III – Mr. Chinn was incapacitated and entitled to exceptional circumstances**

75. Plaintiff repeats and realleges the allegations in paragraphs 1-74 as if more fully set forth herein.

76. Mr. Chinn suffered from a serious medical condition and was hospitalized from March 18 to April 17, 2019, May 14-15, June 7-25, June 25 – July 3, and July 9-29 during the time the Exchange unlawfully terminated his enrollment.

77. Any correspondence regarding change in premiums and/or due dates were not received by Mr. Chinn and not located until after his death when his estate administrator received authority to act on his behalf.

78. Based upon these facts, the Exchange's termination (without Notice or the appropriate grace period), was unwarranted and any deadlines should have been tolled due to his serious illness, multiple hospitalizations, and subsequent death.

79. This Court has the power to read equitable tolling principles into every federal statute of limitation unless inconsistent with the legislative purpose to do so. *See, Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946).

80. The primary goals of the Affordable Care Act are to: make affordable health insurance available to more people; expand the Medicaid program; and support innovative medical care delivery methods designed to lower the costs of health care generally. www.healthcare.gov/glossary/affordable-care-act (last accessed December 30, 2020).

81. By tolling Mr. Chinn's deadlines due to his severe illness and subsequent death, this Court would be acting in concern with the ACA's goal to make affordable health insurance available to more people.

82. In addition, 42 U.S.C. §18083 requires the Secretary to develop streamlined forms that are structured to maximize an applicant's ability to complete the form satisfactorily, taking into account the characteristics of individuals who qualify for applicable health subsidy programs.

83. Mr. Chinn's incapacitation coupled with the correspondence that was NOT structured to maximize his ability to complete the forms means the agency's decision to deny coverage was unwarranted by the facts in this case.

84. Additionally, Mr. Chinn should have received an extension to respond to the concerns as he was an individual with exceptional circumstances under 45 C.F.R. 155.420(d)(9).

85. According to www.healthcare.gov/sep-list/, a person who experienced an unexpected hospitalization or temporary cognitive disability or who was otherwise incapacitated, may qualify for a special enrollment extension.

86. By failing to consider these additional facts and circumstances, this Court should review the entire matter de novo.

**Count IV – Mr. Chinn lived in a FEMA disaster area – an exceptional circumstance**

87. Plaintiff repeats and realleges the allegations in paragraphs 1-86 as if more fully set forth herein.

88.     Mr. Chinn was further entitled to a Special Enrollment Period as he resided in a county declared by the Federal Emergency Management Agency ("FEMA") as a natural disaster area.

89.     Pursuant to Healthcare.gov, a person residing in a FEMA county has 60 days from the end of the FEMA designated incident period to complete any enrollment in Marketplace coverage and request a retroactive start date.

90.     FEMA declared a natural disaster on May 31, 2019 in Butler County beginning May 9, 2019 and continuing.

91.     FEMA did not declare the emergency closed until July 12, 2019 – at which point Mr. Chinn (or his estate) would have had an additional 60 days to complete any enrollment issues. www.fema.gov/disaster-federal-register-notice/amendment-no-3-331 (last accessed December 31, 2020).

92.     By terminating Mr. Chinn's coverage as of May 31, 2019, the agency acted outside the procedure required by law and should be compelled to reinstate Mr. Chinn's coverage through August 1, 2019 and allow his estate to pay the correct premiums.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place for trial of this matter.

## REQUEST FOR RELIEF

**WHEREFORE**, plaintiff respectfully prays that this Court enter judgment on behalf of plaintiff, find that the agency acted arbitrarily and capriciously, abused its discretion, acted in excess of its authority and without observance of procedure required by law, and that the agency decision was unwarranted by the facts; plaintiff further prays that the Court compel the agency to set aside its decision and allow Mr. Chinn's estate to pay the correct amount of premiums for May,

June and July 2019; compel the agency to rescind its termination of Mr. Chinn's coverage; and for such other and further relief as the Court deems just and proper.

                              **NASH & FRANCISKATO LAW FIRM**

                              By  / s / Dean Nash  
                                  Dean Nash      KS #16293  
                                  deannash@nashfranciskato.com  
                                  Brian S. Franciskato    KS #16746  
                                  bfranciskato@nashfranciskato.com  
                            2300 Main Street, Suite 170  
                            Kansas City, Missouri 64108  
                            (816) 221-6600l  FAX:  (816) 221-6612

                            and

                            E. Lou Bjorgaard Prabasco    KS #10926  
                            PROBASCO & ASSOCIATES, P.A.  
                            615 S. Topeka Blvd  
                            Topeka, KS  66603  
                            lou@probascolaw.com  
                            (785) 233-2332  FAX:  (785) 233-2384

                            **ATTORNEYS FOR PLAINTIFF**