IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HENRY CHINN, JR., Administrator
of the Estate of Michael
Chinn, Sr., deceased,

    *Plaintiff,*

vs.

Case No. 20-2662-EFM

XAVIER BECERRA, Secretary of
Health and Human Services,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Henry Chinn, Jr., Administrator of the Estate of Michael Chinn, Sr. ("Decedent"), has brought a Motion for Judgment regarding his appeal of the Federal Hearing Officer ("FHO") and Defendant U.S. Dept. of Health & Human Services' ("HHS") decision to deny Decedent the advance premium tax credits. From Plaintiff's filings, it appears that Plaintiff has attempted to bring separate claims for lack of due process, equitable tolling, and promissory estoppel for the first time on appeal. In response, HHS has filed a Motion to Dismiss Plaintiff's equitable tolling, promissory estoppel, and due process claims. Having reviewed the administrative record, and for the reasons discussed below, the Court denies Plaintiff's motion and grants HHS's motion.

## I.  Factual and Procedural Background

**A. A brief overview of the Federally-Facilitated Exchange**

This is a case about taxes and insurance. At its core, this case revolves around the Federally-Facilitated Exchange ("FFE"), referred to in Plaintiff's brief as "Marketplace", an entity created by the Affordable Care Act ("ACA"). Through the FFE, eligible individuals may apply for Insurance Affordability Programs. Relevant to this case are the advance payments of premium tax credits ("APTC") offered through the FFE to help pay down insurance premiums.[1] The HHS directly pays the APTCs to the insurance provider. To reconcile these advance payments, the individual must file a federal income tax return for the taxable year.[2] Failure to file an income tax return for a APTC payments made during a previous year means that the individual is ineligible for any further APTC payments.[3]

Should an individual fail to file a tax return for a year when APTC payments were received, the FEE's payments to the insurer cease immediately. The insurer must then give notice to the insured of the premium for which the individual is now wholly responsible.

---

[1] *See* 42 U.S.C. § 18082.

[2] *See* 26 U.S.C. § 36B(f); 26 C.F.R. § 1.36B-4.

[3] 45 C.F.R. § 155.305(f)(4) ("The Exchange may not determine a tax filer eligible for APTC if HHS notifies the Exchange as part of the process described in § 155.320(c)(3) that APTC were made on behalf of the tax filer . . . and the tax filer . . . did not comply with the requirement to file an income tax return for that year as required by 26 U.S.C. 6011, 6012, and implementing regulations and reconcile the advance payments of the premium tax credit for that period.").

Notably, the FFE does not directly provide insurance coverage.[4] In other words, the FFE is not itself an insurer. Rather, it merely helps to lower the costs of private insurance contracts between eligible individuals and their insurance companies.

**B. Facts of the case**

   *1.   The 2017 tax return and notices*

In 2017, Decedent successfully enrolled in the Kansas FFE, receiving APTC payments to offset the cost of health insurance. As required to receive these payments, Decedent attested that he would submit a tax return for 2017. On January 10, 2018, Decedent received notice explicitly stating that he would have to file a tax return for 2017. However, Decedent did not at that time file his 2017 tax return.[5]

A year passed without Decedent filing any tax return or obtaining insurance coverage or APTC payments through the FEE. In December 2018, Decedent applied for insurance through the FFE once more, seeking APTC payments for 2019. On his application, Decedent incorrectly stated that he had filed his 2017 tax return. The FFE matched Decedent with coverage through Blue Cross Blue Shield ("BCBS"). Based on Decedent's false information regarding his 2017 tax return, the FFE began making APTC payments in January 2019 to BCBS on Decedent's behalf. It is unclear why the FFE did not confirm whether Decedent had in fact filed his 2017 tax return prior to issuing payments.

On or about February 13, 2019, Decedent received a more explicit notice from the FFE regarding his failure to file his 2017 tax return. It stated:

---

[4] Throughout the administrative record and the pleadings, the term "coverage" has been carelessly applied to both BCBS's insurance coverage and the APTC payments. For the sake of clarity and coherency, "coverage" will refer to the insurance coverage provided by BCBS, not the APTC payments.

[5] As discussed below, Decedent's 2017 tax return was not filed until at least April 2020 by his estate.

> You're getting this notice because you're currently enrolled in 2019 Marketplace health coverage with financial help, such as advance payments of the premium tax credit (APTC) and cost-sharing reductions. The Marketplace must make sure you filed a 2017 federal income tax return and reconciled the APTC paid for the 2017 Marketplace coverage of all members of your household.
>
> **URGENT**: If you haven't filed your 2017 tax return yet, you should do so immediately, even if you don't usually have to file a tax return.
>
> …
>
> It's extremely important for you to file your 2017 income tax return and reconcile the APTC paid for the 2017 Marketplace coverage of all members of your household. The Marketplace will compare records with the Internal Revenue Service (IRS) soon. If we can't confirm the tax filer or tax filers in your household filed a 2017 tax return for your family with "IRS Form 8962, Premium Tax Credit," **everyone in your household may lose all help with costs they're currently getting for Marketplace coverage, including APTC or cost-sharing reductions.** This means you may be responsible for the full cost of your monthly health insurance premiums and the full amount of any deductibles, copayments, or coinsurance.
>
> …
>
> **The Marketplace WON'T send another notice to warn you to file or amend your 2017 tax return and reconcile APTC**.[6]

Still, Decedent did not file his 2017 tax return. The FFE made its last payment to BCBS in May 2019, terminating the APTC payments from June 2019 onward. This did not automatically unenroll him from his insurance coverage with BCBS. Rather, that coverage continued with that caveat that Decedent was now responsible for the entirety of the insurance premium.

    *2.*    *Hospitalizations, "special enrollment period," and "confusing" notices*

On March 5, 2019, Decedent began what would become a series of temporary hospitalizations continuing sporadically until his death. Suffering from end stage liver cancer, as

---

[6]R. at 105 (emphasis in original).

well as a host of other related issues, Decedent was diagnosed in May 2019 as experiencing confusion and hallucinations as well.

On May 13, 2019, BCBS notified Decedent that he owed $1,206.95 for June's insurance coverage, due prior to June 1, instead of the APTC-reduced rate of $78.95. Decedent did not pay the full premium. On June 12, 2019, BCBS sent Decedent a notice that his policy would be terminated if he did not pay the premium by June 22. On June 27, 2019, BCBS sent another notice, this time stating that Decedent's insurance coverage terminated retroactively to May 31, 2019.

As stated above, Decedent's failure to file his 2017 tax return resulted in the FFE cutting off his APTC payments. After ceasing payments, the FFE sent Decedent a notice on May 10 advising him of a "special enrollment period" and stating that he should "[t]ake action to enroll."[7] In fact, the notice explicitly stated that the person receiving it is "not eligible for financial help with Marketplace plan costs, even if you were eligible in the past."[8] The notice then explained that Decedent's ineligibility stemmed from his failure to "file a tax return with IRS Form 8962 for a year in which [Decedent] received advanced payments of the premium tax credit."[9] Even though Decedent had not yet applied for any other coverage, the notice listed an application date as May 10.

Either in response to the May 10 notice or with the knowledge that BCBS would soon terminate his coverage, Decedent, or someone acting on his behalf, applied for new health insurance through the FFE on May 31, 2019. Once again, Decedent incorrectly stated that he had filed federal income tax returns for each year in which he had received APTC payments. And

---

[7] *See generally* 45 C.F.R. § 155.420.

[8] R. at 112.

[9] R. at 112.

once again, the FFE failed to confirm this assertion before issuing Decedent a notice stating that he was eligible for APTC payments. However, the notice clearly stated that coverage was not to begin until after Decedent had selected a plan, with coverage beginning on the first of the following month should Decedent select a plan within the first 15 days of a month. Decedent, or someone acting on his behalf, did not select a new plan until July 3, 2019, meaning that coverage would not begin until August 1, 2019. Decedent passed away two days before coverage would begin on July 29, 2019.

After Decedent's death, the FFE sent two letters stating that Decedent's coverage facilitated through the FFE ended because of his death. The first letter on August 29, 2019, stated that coverage would end retroactively on August 1. The letter on October 11, 2019, stated that coverage had ended on July 30, 2019. Each letter referred to the application date for this coverage as May 31, 2019. The letters stated that no further action was required by Decedent's estate.

Only after the deadline had passed did Decedent's estate realize that Decedent's 2017 tax return should have been filed by December 31, 2019, to reinstate APTC payments. The tax return was filed in either April or August of 2020. The parties agree that the specific date is irrelevant.

## C.     Procedural history of appeals

On January 23, 2020, Decedent's estate filed an appeal of the FFE's May 10, 2019, eligibility notice stating that Decedent was ineligible for APTC payments because of his failure to file a 2017 tax return with the Marketplace Appeals Center. On June 8, 2020, the Marketplace Appeals Center issued an "Informal Resolution" against Decedent's appeal. The decision rested on Decedent and his estate's failure to file the 2017 tax return by December 31, 2019. Plaintiff soon after filed a notice to continue its appeal on June 29. On October 23, a federal hearing officer ("FHO") held an administrative hearing regarding the May 10, 2019, eligibility notice. Six days

later, the FHO announced its decision to uphold the FFE's termination of APTC payments because Decedent and his estate failed to file the 2017 tax returns by December 31, 2019. Resting its decision on 45 CFR § 155.535(f), the FHO conclusively held that Decedent was ineligible to receive APTC payments as a matter of law.

Plaintiff, pursuant to 5 U.S.C. § 701 et seq., filed for judicial review of the FHO's decision. After filing his "complaint", Plaintiff filed a "Motion for Judgment" along with what could be interpreted as an appellate brief. In response, HHS filed a responsive brief as well as a Motion to Dismiss what it perceived to be Plaintiff's standalone claims, namely equitable tolling, promissory estoppel, and due process.

## II.     Legal Standards

**A.     APA review of agency action.**

As a preliminary matter, Plaintiff discusses both the *Chevron* and *Skidmore* standards of judicial review of agency action.[10] Neither apply to this case, as there is neither an ambiguous statute which an agency has interpreted as in *Chevron* nor an opinion letter warranting the less deferential *Skidmore* standard.[11] Instead, Plaintiff has applied for judicial review of agency action under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 ("APA"). Therefore, the statutory language of the APA itself provides the proper standard to review Plaintiff's appeal.[12]

---

[10] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

[11] *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) ("[I]nterpretations contained in formats such as opinion letters are entitled to respect under [Skidmore] but only to the extent that those interpretations have the power to persuade.") (further citations and quotations omitted) (emphasis added).

[12] *See generally* 5 U.S.C. § 706; *cf Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1265 (10th Cir. 2020) (holding that APA standards applied to review of Medicare-reimbursement cases).

Under the APA, a party may seek judicial review of an agency's action when that individual has suffered legal wrong or been aggrieved by that agency.[13] Although the court's review of the administrative record is conducted de novo,[14] the court's scope of review of an agency decision is narrow.[15] The court may only overturn an agency decision if it is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; . . . or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.[16]

These deferential standards require that the court refrain from substituting its judgment for that of the agency.[17] In fact, there is a presumption that an agency action is valid unless the party challenging the action proves otherwise.[18]

Furthermore, when reviewing an appeal of an administrative decision, a district court acts as an appellate court.[19] Generally, an appellate court will not review issues not properly raised before the initial factfinder.[20] Although appellate courts retain the discretion to review such issues, they must employ that discretion only "in the most unusual circumstances."[21] What is less clear

---

[13] *Id.* § 702.

[14] *Penner v. Vilsack*, 2011 WL 6258820, at *2 (D. Kan. 2011) (quoting Downer v. United States, 97 F.3d 999, 1002 (8th Cir.1996) (further citation and quotations omitted)).

[15] *Colorado Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006).

[16] 5 U.S.C. § 706(2).

[17] *Colorado Wild*, 435 F.3d at 1213; *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002).

[18] *Hays Med. Ctr. v. Azar*, 956 F.3d 1247, 1264 (10th Cir. 2020).

[19] *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) ("Reviews of agency action in the district courts must be processed as appeals.").

[20] *United States v. Lyons*, 510 F.3d 1225, 1238 (10th Cir. 2007) (citation omitted).

[21] *Lyons v. Jefferson Bank & Trust*, 994 F.2d 716, 721 (10th Cir. 1993) (citation omitted).

is whether this discretion applies to not only issues not raised before the initial factfinder but issues that were improperly raised as well. In any case, the Court will not exercise such discretion here.

### III.     Analysis

**A.     Because Plaintiff has not shown that his alleged injury can be redressed by this Court, Plaintiff's claim fails for lack of standing.**

As a preliminary matter, and one discussed only in part by the parties, Plaintiff's claim fails for lack of a justiciable remedy. Like all issues involving a court's jurisdiction, the issue of standing may be raised *sua sponte*.[22] To establish standing on any particular claim, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[23] A plaintiff may satisfy this last element by showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[24] For each of these elements, the plaintiff bears the burden of showing that he has Article III standing.[25]

In the present case, Plaintiff's claim fails because the remedy he seeks is unavailable through this appeal. In other words, Plaintiff's injury is not redressable by the Court. Therefore, Plaintiff lacks standing to argue the merits of this case.

First, the FFE did not deny Decedent insurance coverage. Rather, they ceased making APTC payments. Therefore, Plaintiff's sole requested relief, reinstatement of coverage under 45 C.F.R. § 155.430(e), is not an available remedy because the FFE never denied Decedent

---

[22] *See Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).

[23] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[24] *Habecker v. Town of Estes Park, Colo.*, 518 F.3d 1217, 1224 (10th Cir. 2008)) (further quotations omitted).

[25] *Id.*

insurance coverage to begin with. This is clear from the fact that BCBS continued to carry Decedent as an insured even after the APTC payments ceased. The only difference was that Decedent became responsible for the entire insurance premium. Decedent's lapse in insurance coverage was due to his failure to pay the insurance premiums for the month of June, not because the FFE canceled his coverage. In fact, Decedent remained eligible to purchase or continue insurance coverage through the FFE without filing his 2017 tax return, as shown by the May 10, 2019 notice.

It should be clear what is not at issue before this Court. First, Plaintiff is not bringing a tortious interference action or other claim at law against HHS to recover for damages sustained because the FFE terminated APTC payments.[26] Furthermore, Plaintiff is not bringing *any* sort of action against BCBS, as BCBS is not a party to this suit, much less an action for wrongful termination of coverage. Finally, Plaintiff is not requesting reimbursement for the amount of APTC payments denied for June and July of 2019 prior to Decedent's death. In fact, Plaintiff's only requested relief is the retroactive reinstatement of BCBS's coverage. In support of this request, Plaintiff fails to cite any law supporting the Court's authority to order a nonparty to reinstate coverage based on an opposing party's withdrawal of partial premium payments. Even for a case of first impression, such relief appears far beyond the judicial power.

Plaintiff appears to misunderstand the relationship between the APTC payments and the BCBS coverage. The APTC payments were not equivalent to the coverage itself. Rather, those payments were made directly to BCBS to help offset the cost of the insurance coverage. Decedent's

---

[26] Plaintiff has not even pled, much less shown evidence, that Decedent was unable to make the payments to BCBS to prevent coverage from lapsing. In fact, at the hearing in front of the FHO officer, the present counsel for Decedent's Estate admitted that Decedent had the money to pay the BCBS premium.

coverage still depended on him paying the remaining premiums, as shown by his prior payments of $78.95 each month until June 2019. When the APTC payments ceased, BCBS properly notified Decedent that his premium had increased to a total of $1,206.95. If Decedent had paid that premium, his coverage with BCBS for the month of June would have continued. Failure to pay the requisite premium would terminate the coverage, just as failure to pay the $78.95 in a month when BCBS received the APTC payments would do the same. In other words, Decedent remained personally responsible for paying his premiums with or without the APTC payments. His coverage was not solely dependent on the FFE. If he had paid the $1,206.95 for June and July and sought reimbursement in the amount of $2,256 from HHS on appeal, that might be another matter altogether. But Decedent did not. Instead, he allowed his coverage to terminate due to by failing to pay the insurance premium.

In fact, the FFE regulations indicate that an individual cannot appeal an insurance carrier's termination of coverage through the FFE appeals process.[27] Instead, the proper course of action in that case is to file an appeal with the insurer directly.[28] If Marketplace had terminated Decedent's coverage, that would be another matter. But the record is clear that Marketplace only terminated Decedent's APTC payments, not his insurance coverage.

As it stands, Plaintiff's requested remedy is unavailable to him. Even if the appeal before the FHO included (or even could include) an appeal of BCBS's decision to end coverage, the Court

---

[27] *See* 45 C.F.R. § 155.505(b) (failing to list an insurance carrier's determination of eligibility as an appealable matter); *see also* HEALTHCARE.GOV, How to Appeal a Marketplace Decision: When Can You Appeal?, https://www.healthcare.gov/marketplace-appeals/what-you-can-appeal/ (last visited Sep. 12, 2022) ("Marketplace decisions you can't appeal . . . Your health insurance company: . . . Refuses to pay a claim or ends your coverage.").

[28] *See generally* 45 C.F.R. § 147.136 (detailing requirements for appeals made directly to insurance carrier wholly separate from Marketplace appeals); *see also, e.g.*, HEALTHCARE.GOV, *Appealing A Health Plan Decision: How To Appeal An Insurance Company Decision* https://www.healthcare.gov/appeal-insurance-company-decision/appeals/ (last visited Sep. 12, 2022) (describing appeals process for denial of coverage by insurance carrier).

lacks jurisdiction to order BCBS to reinstate coverage when BCBS is not a party to this case. If Plaintiff's goal is to reinstate insurance coverage or at least recover for hospital expenses, he has named the wrong defendant and sought redress through the wrong channel.[29] As it is, Plaintiff is trying to fit a square peg into a round hole by pursuing this appeal with the FFE instead of an appeal with BCBS or an actual lawsuit filed in court. Therefore, Plaintiff's claim fails due to lack of standing, and his self-styled Motion for Judgment must be denied.

**B.     Because Plaintiff's equitable and due process claims regarding the sufficiency of the notices were not properly before the FHO, the Court will not address those issues on appeal.**

In his petition, Plaintiff raises several equitable arguments as to the sufficiency of the various notices, requesting that the Court toll the deadline to file the 2017 tax return for eligibility for APTC payments and employ promissory estoppel to retroactively reinstate those payments. In response, HHS argues that the Plaintiff's equitable claims are without merit and that Court lacks subject matter jurisdiction to hear Plaintiff's promissory estoppel claim. HHS is partially correct, although not for the reasons cited in their brief.

The Court has already found that the sole issue in front of the FHO officer was whether Marketplace properly terminated the APTC payments. Plaintiff's equitable tolling and promissory estoppel claims were not raised below. Furthermore, the issue of the notices' sufficiency was not properly before the FHO, as Decedent's Estate should have filed a grievance with Marketplace to properly contest the notices sufficiency.[30] Furthermore, as both of Plaintiff's equitable claims

---

[29] *See, e.g.*, *Jenkins v. Burtzloff*, 66 F.3d 338 (table), 1995 WL 547819, at *1 (10th Cir. 1995) (holding that plaintiff had sued wrong defendant in wrong cause of action); *Kelso v. Miller*, 303 F. App'x 585, 585 (10th Cir. 2008) ("Simply put, Mr. Kelso has sued the wrong defendants in the wrong place, and the district court was correct that it had no jurisdiction to address his complaints.").

[30] *See* 45 C.F.R. § 155.505(b) (failing to list insufficiency of notices as an appealable matter); *see also, e.g.*, Audio Recording of Hearing before FHO officer (Oct. 23, 2020) (on file with the Court) (stating that sufficiency of notices was an issue that the FHO could not address on appeal and would have be brought as a grievance).

depend on the insufficiency of these notices, they likewise are improperly before this Court on appeal. Similarly, to the extent Plaintiff raises the issue of due process (a claim not addressed in Plaintiff's brief) such a claim fails as improperly brought for the first time on appeal. Although a district court utilizing its appellate jurisdiction may exercise its discretion to hear issues not raised at the administrative hearing, the Court declines to do so in this instance. This is largely because even if the claims were proper *and* Plaintiff prevailed on the merits, Plaintiff still could not receive his requested remedy of reinstatement of Decedent's BCBS coverage for the reasons stated above. Therefore, HHS's Motion to Dismiss will be granted.

**C.     To the extent Plaintiff seeks the retroactive reinstatement of APTC payments, such an appeal fails as the FFE acted reasonably in denying such payments.**

Plaintiff's brief clearly identifies his position as seeking the reinstatement of insurance coverage, not the value of the terminated APTC payments for June and July of 2019. If, however, Plaintiff's brief were interpreted to request such relief, his appeal would still fail. 45 C.F.R. § 155.305(f)(4) prohibits any Exchange from distributing APTC payments to an individual who failed to file a tax return for a year in which he or she received APTC payments.

Plaintiff does not challenge the validity of this regulation. It is undisputed from the record that Decedent received APTC payments for 2017 and yet failed to file a tax return for those payments. Without Decedent having filed his 2017 tax return, the FFE could not issue further APTC payments to him. Therefore, its termination of APTC payments to Decedent was not erroneous. There is nothing arbitrary or capricious in the FFE adhering to federal regulations on this count. Likewise, nothing in the record indicates that the FFE acted outside of its statutory limitations, violated Decedent's constitutional rights, failed to observe the proper procedures of law, nor acted in a way unwarranted by the facts. Plaintiff's sole argument relies on the notion that

the process was fundamentally unfair.  However, any claims stemming from this position are not within the Court's jurisdiction, as discussed above.

The Court's holding in this case is very narrow.  Whether Plaintiff could prevail in another proceeding that properly addresses Decedent's unfortunate circumstances is an issue on which the Court declines to comment.  Nevertheless, Plaintiff's appeal must be denied because Plaintiff's claims cannot be redressed by the Court through the administrative appeals process.

**IT IS THEREFORE ORDERED** that Plaintiffs Motion for Judgment (Doc. 30) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Plaintiff's claims for due process, equitable tolling, and promissory estoppel (Doc. 39) is **GRANTED.**

**IT IS SO ORDERED.**

Dated this 14th day of September, 2022.

This closes the case.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE